**HIGHER ONE, INC., Plaintiff–Respondent,**

v.

**TOUCHNET INFORMATION SYSTEMS, INC., Defendant–Movant.**

No. 13–mc–6020 CJS.

United States District Court, W.D. New York.

Signed Feb. 21, 2014.

Filed Feb. 24, 2014.

Joseph V. Saphia, Frommer Lawrence & Haug LLP, New York, NY, for Plaintiff–Respondent.

Angus W. Dwyer, Spencer, Fane, Britt & Browne, Kansas City, MO, for Defendant–Movant.

## ORDER

CHARLES J. SIRAGUSA, District Judge.

## INTRODUCTION

Defendant–Movant TouchNet Information Systems, Inc. ("TouchNet") seeks an order quashing a subpoena served by Plaintiff–Respondent Higher One, Inc. ("Higher One") in connection with patent litigation that is pending in the U.S. District Court for the District of Connecticut. The subpoena was served on TouchNet's non-testifying expert witness, Tom Bell ("Bell"), who resides in this Judicial District. The application is granted in part and denied in part.

## BACKGROUND

The parties' respective businesses relate to the facilitation of payments involving colleges, universities and students. TouchNet states that it "is in the business of developing software and licensing it to numerous colleges and universities in the United States and elsewhere," and that its software "facilitates electronic payments between Schools, their students, and others in the campus community." For example, TouchNet's software purportedly "allows Schools to present students' tuition and other bills online," and to "electronically deposit disbursements to a student-designated bank account, such as a refund of an overpayment (if, for example, a student drops a class), or, as relevant to this matter, a disbursement of the student's residual financial aid—often referred to in higher education as a 'refund.'"[1] Higher One's business also pertains to such refunds. According to TouchNet,

> Higher One derives most of its revenue from account revenue consisting principally of fees from debit cards which Plaintiff (through its banking partner) issues to students as a means of receiving their Refunds. Plaintiff issues its debit cards through a two-part strategy. First, under the "OneDisburse" program, the School agrees to outsource the disbursement of Refunds to Plaintiff, such that the School sends the full amount of each student's Refund to Plaintiff, and Plaintiff forwards the funds to the student in accordance with the student's instructions. Students, by making a designation through Plaintiff, may request their Refunds to be furnished by paper checks, ACH transfers, or deposits to their Plaintiff debit cards. The Schools provide Plaintiff with the students' contact information and Plaintiff markets to students in an effort to increase both the number of new "OneAccounts" and usage of existing "OneAccounts."[2]

On February 24, 2009, Higher One obtained a U.S. patent ("the '536 patent"), entitled "Systems and Methods to Facilitate a Trans-

---

1.  Motion to Quash [# 1–1] at pp. 1–2.

2.  Motion to Quash [# 1–1] at pp. 2–3.

fer of a Refund Amount from an Educational Institution to a Student." Shortly thereafter, on February 27, 2009, Higher One commenced the aforementioned patent infringement litigation against TouchNet in the District of Connecticut.[3] Higher One maintains that one of TouchNet's "software modules," entitled "TouchNet B+ Payment—eRefunds," infringes the '536 Patent.[4]

TouchNet has asserted various defenses in that action, including that the '536 Patent is invalid because it was anticipated, and rendered obvious, by prior art. More specifically, TouchNet maintains that "the claims in the '536 Patent were anticipated, and rendered obvious, by multiple campus card programs introduced, at least, as early as the mid–1990s."[5] TouchNet asserts counterclaims, seeking a declaratory judgment that it is not infringing the '536 patent, and that the patent is unenforceable in any event. Additionally, TouchNet is asserting a counterclaim for unfair competition, in which it accuses Higher One of filing a baseless infringement lawsuit in order to negatively affect TouchNet's business relationships.[6]

In connection with its defense of the patent infringement action, TouchNet retained Bell as a non-testifying consulting expert, purportedly because Bell has knowledge regarding the "multiple campus card programs" that were allegedly in use prior to the issuance of the '536 Patent. TouchNet indicates that, "in order to better understand these campus card programs, [it] hired Tom Bell as a non-testifying expert, given that Mr. Bell has worked with campus card programs."[7] Specifically, for approximately ten years, between 2001 and 2011, Bell previously worked for Blackboard, Inc. ("Blackboard"), "a provider of campus card solutions."[8]

The problem with that, as Higher One sees it, is that Blackboard is one of Higher One's business partners, with whom it has shared confidential information:

> Early on, Higher One partnered with [Blackboard], a provider of campus card solutions so that customers of both Blackboard and Higher One could integrate the two companies' product offerings. Towards that end, Higher One has exchanged sensitive and proprietary information regarding Higher One's business and products with Blackboard on a confidential basis. As per Higher One's contracts with Blackboard, Blackboard employees are required to keep Higher One's information confidential.[9]

Because of that business relationship, Higher One indicates that it wants to find out what, if anything, Bell learned about Higher One while he was working at Blackboard, and whether he shared any confidential information about Higher One with TouchNet. More specifically, Higher One states:

> Higher One is now aware that Mr. Bell was a high level employee at its partner Blackboard until at least 2011, and since 2001, Mr. Bell was *likely* exposed to Higher One's confidential information. Mr. Bell worked for Blackboard from 2001 to July 2011 as a Vice President for Commerce Industry Relations and later as the Vice President for Strategic Consulting—Transact (the business unit of Blackboard with which Higher One's products integrate). Higher One is entitled to determine the extent of Mr. Bell's knowledge of Higher One and its business, and the extent to which he may have communicated that information to TouchNet.[10]

(emphasis added). Higher One, though, doesn't specify the nature of the confidential information that it shared with Blackboard, or explain how such information relates to the underlying patent litigation, if at all. Nor does Higher One indicate that it has

---

3. United States District Court for the District of Connecticut, Docket No. 3:09–cv–00337–AWT.

4. *See,* Amended Complaint, 3:09–CV–00337 AWT, Docket No. [# 39] (D.Conn.).

5. Motion to Quash [# 1–1] at p. 4.

6. *See,* Answer to Amended Complaint, 3:09–CV–00337 AWT, Docket No. [# 45] (D.Conn.).

7. Motion to Quash [# 1–1] at p. 4.

8. Higher One's Response [# 3] at p. 2.

9. Higher One's Response [# 3] at p. 2.

10. Higher One's Response [# 3] at pp. 2–3.

checked with its partner, Blackboard, to see to what, if any, confidential information Bell may have had access. Overall, as evident from the quote above, Higher One doesn't offer any evidence that Bell has any particular confidential information concerning Higher One, or that he has shared such information with TouchNet.

Nevertheless, Higher One maintains that it is entitled to discover whether any improper exchange of information has occurred. In that regard, Higher One has served a deposition subpoena on Bell, along with an attached list of eleven document requests, demanding:

1. All documents and communications with or concerning Bill Norwood [ (identified by Higher One as being 'involved in the campus card program at the Florida State University Card Application Technology Center in the mid–1990's) ] since 2009 concerning Higher One, Inc. or the Higher One–TouchNet patent litigation.

2. All documents and communications with or concerning TouchNet, including Dan Toughey [apparently an employee of TouchNet], since 2009 concerning Higher One, Inc. or the Higher One–TouchNet patent litigation.

3. All documents and communications with or concerning [TouchNet's law firm,] Spencer Fane Britt and Browne LLP, including Patrick Whalen, Kyle Elliott, Nick Badgerow, or Lih Chen, since 2009 concerning Higher One, Inc. or the Higher One–TouchNet patent litigation.

4. A copy of any Confidentiality Undertaking signed by [Bell] concerning the Higher One–TouchNet patent litigation.

5. A copy of any engagement or retainer agreement [between Bell and] TouchNet or Spencer Fane Britt and Browne LLP concerning the Higher One–TouchNet patent litigation.

6. A copy of any invoices sent by [Bell] to TouchNet or Spencer Fane Britt and Browne LLP concerning the Higher One–TouchNet patent litigation.

7. Documents sufficient to evidence any payments made to [Bell] by TouchNet or Spencer Fane Britt and Browne LLP concerning the Higher One–Touchnet patent litigation.

8. All communications with or concerning Heartland Payment Systems since 2009 concerning Higher One, Inc. or the Higher One–TouchNet patent litigation.

9. All documents and communications since 2009 concerning Higher One, Inc. or the Higher One–TouchNet patent litigation.

10. All documents and communications with or concerning Commerce Bank since 2009 concerning Higher One or the Higher One–Touchnet patent litigation.

11. All documents and communications with or concerning Blackboard, Inc. since 2009 concerning Higher One or the Higher One–TouchNet patent litigation.

Docket No. [# 1–3].

In this regard, Higher One indicates that it is seeking facts from Bell, not expert opinions, and specifically, facts regarding "the extent of Mr. Bell's knowledge of Higher One and its business, and the extent to which he may have communicated that information to TouchNet." [11] Higher One maintains that it is entitled to "(1) a limited deposition to question Mr. Bell regarding the facts that pre-date his involvement in the Patent Litigations, as well as the information Mr. Bell learned about Higher One because of his employment at Blackboard (even if it postdates his retention), and whether he shared that information with TouchNet or TouchNet's counsel; and (2) all non-privileged documents regarding the same." [12] Notably, the subpoena also demands "all documents and communications" between Bell and TouchNet's attorneys concerning Higher One and/or the patent litigation, including retainer agreements, invoices and payment receipts.[13]

On December 27, 2013, TouchNet filed the subject miscellaneous action and moved to quash the subpoena.[14] TouchNet maintains

11. Higher One's Response [# 3] at p. 3.

12. Higher One's Response [# 3] at pp. 3–4.

13. *See,* Motion to Quash, Exhibit A [# 1–3].

14. TouchNet indicates that is has standing to bring the motion, since its work product would be inevitably disclosed if Higher One was permit-

that the subpoena violates Fed.R.Civ.P. 26(b)(4)(D), since it seeks discovery from "an expert ... who is not expected to be called as a witness at trial." TouchNet contends that although that rule provides an exception, and allows such discovery upon a showing of "exceptional circumstances," Higher One has not made such a showing. Alternatively, TouchNet indicates that the subpoena should be quashed based on the attorney work-product doctrine. TouchNet relies largely, though not exclusively, on *Moore U.S.A. Inc. v. Standard Register Co.*, 206 F.R.D. 72, 74–75 (W.D.N.Y.2001) (Curtin, J.). In support of the application, TouchNet submits an affidavit from Bell, in which he indicates, *inter alia,* the following: 1) TouchNet retained him on February 2, 2012; 2) prior to being retained, he had no knowledge regarding any Higher One patent or patented invention; and 3) prior to being retained, he had no knowledge of the parties' lawsuit.

Higher One responds by reiterating that during Bell's employment with Blackboard, he was "likely exposed to Higher One's confidential information." Higher One asserts that such exposure was "likely" since Bell was Vice President for Blackboard's "Strategic Consulting–Transact" business unit, "with which Higher One's products integrate." [15] Higher One also contends that Bell's affidavit is suspect, since he does not "mention a lack of confidential information regarding Higher One, Higher One's business or Higher One's products." [16]

In reply, TouchNet has submitted, *inter alia,* a supplemental affidavit from Bell in which he indicates the following: 1) he does not recall attending any strategic planning or development meetings with Higher One while he was employed by Blackboard; 2) he does not possess any confidential material relating to Higher One and has not provide TouchNet or TouchNet's attorney with any confidential material relating to Higher One; and 3) he has not seen any "attorney's eyes only" communications between Higher One and TouchNet's counsel.

### DISCUSSION

TouchNet maintains that the Court should quash the subpoena as violating FRCP 26(b)(4)(D),[17] which states, in pertinent part:

*Expert Employed Only for Trial Preparation.* Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only: (i) as provided in Rule 35(b); or (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

FRCP 26(b)(4)(D) (West 2014). In this context,

[e]xceptional circumstances may be established by demonstrating that the party seeking discovery is unable to obtain equivalent information that is essential to the preparation of the case from other sources. This includes situations in which the object or condition observed by the non-testifying expert is no longer observable by experts hired by the party seeking discovery. A second situation commonly recognized as constituting exceptional circumstances is when it is possible to replicate the expert discovery, but the costs

---

ted to depose Webb. Higher One does not challenge TouchNet's standing.

**15.** Higher One's Response [# 3–1] at pp. 2–3.

**16.** Higher One's Response [# 3–1] at p. 3. Additionally, Higher One contends that "the timing and circumstances" of TouchNet's retainer of Bell is "suspect," since TouchNet's attorney indicated that Bell was retained in 2010, while Bell indicates that he was retained in 2012. However, as proof of such alleged inconsistency, Higher

One relies only on an unsworn statement in its memo of law, which the Court is not crediting.

**17.** Prior to 2010, this section was numbered as FRCP 26(b)(4)(B). TouchNet's papers also make a passing reference to FRCP 45, which, in pertinent part, provides that a court must "quash or modify a subpoena that," *inter alia,* "requires disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects a person to undue burden." FRCP 45(c)(3)(A) (West 2014).

would be judicially prohibitive. Another example of 'exceptional circumstances' is when there are no other available experts in the same field or subject area.

MOORE'S FEDERAL PRACTICE, 3d ed. § 26.80[2] (LexisNexis 2011). On the other hand,

[a] party may engage in discovery with respect to information that a consultant expert acquired prior to the time he or she was retained by an opposing party. Further, Rule 26(b)(4) does not preclude the discovery of facts and opinions that an opposing party's consultant experts acquired in anticipation of the litigation but prior to being retained by the opposing party.

*Id.*

■ In the instant case, the record indicates that on February 2, 2012, TouchNet retained Bell as a non-testifying expert, in anticipation of litigation or to prepare for trial, on February 2, 2012. Accordingly, Higher One cannot obtain discovery from Bell concerning facts or opinions that he obtained or formed after that date, unless it can demonstrate exceptional circumstances. In that regard, the Court finds that Higher One has not demonstrated exceptional circumstances based on Bell's former employment with Blackboard. Moreover, while in general "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," *see*, FRCP 26(b)(1), Higher One has not made any convincing argument that Bell has confidential information concerning Higher One, or even if he did, that such information would be relevant to any claim or defense in this action. *See, Mandell v. The Maxon Co., Inc.*, No. 06 Civ. 460(RWS), 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007) ("The party seeking discovery bears the burden of initially showing relevance.") (citation and internal quotation marks omitted). Consequently, TouchNet's motion to quash is granted with regard to: 1) information that post-dates February 2, 2012, including communications between Bell and TouchNet's attorneys; and 2) information concerning alleged confidential information shared between Higher One and Blackboard.

■ However, Higher One also seeks ordinary fact discovery from Bell, concerning the period prior to which he was retained by TouchNet. TouchNet construes the comments to Rule 26(b)(4)(D) as prohibiting Higher One from discovering "facts and opinions known by Mr. Bell prior to being retained by Touchnet," because he "was not involved with the underlying facts of this case." Motion to Quash [# 1–1] at p. 8. On that point, the Advisory Committee Notes to Rule 26(b)(4)(B), later re-numbered as 26(b)(4)(D), state that the rule

does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to the transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness.

TouchNet apparently interprets that statement to mean that Bell cannot be deposed regarding any information that he had prior to being retained, unless it relates *specifically* to the parties' dispute. *See*, Motion to Quash [# 1–1] at p. 9 ("Bell would only be an ordinary witness if Plaintiff could prove his involvement with the specific facts of this case, or if he had been an employee of either party prior to this litigation. Because Plaintiff cannot make such a showing, Plaintiff's subpoena should be quashed even if it is tailored to facts known by Mr. Bell prior to being retained by TouchNet."). The Court, however, understands the rule, and the Committee Notes, to mean that a non-testifying expert witness can be deposed concerning matters that pre-date his retention by the opposing party, "like an ordinary witness," subject to the relevancy requirements and any privileges that may apply. *See, e.g.*, *Millsaps v. Aluminum Co. of America*, MDL No. 875, EDPA Civil No. 10–84924, 2012 WL 203458, at *2 (E.D.Pa. Jan. 24, 2012) (Observing that Rule 26(b)(4)(D) "does not bar a deposition where the witness has relevant knowledge outside his or her role as a consulting expert, and appropriate precautions can be taken at the deposition under Rule 30(c)(2) with respect to the witness's protected information."). In the instant case, therefore, Higher One may depose Bell

concerning, for example, "his knowledge of his previous activities and experience with campus card programs (namely, the allegedly invalidating prior art TouchNet asserts)." [18]

## CONCLUSION

TouchNet's application to quash is granted in part and denied in part, as explained above. The Clerk is directed to close this action.

SO ORDERED.

---

18. Higher One's Response [# 3] at p. 5.